**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

FORMULA SPORTS CARS, INC; BILL
HOLT CHEVROLET OF BLUE RIDGE,
INC., individually and on behalf of all
similarly situated,

       Plaintiffs,

    v.

CDK GLOBAL, LLC,

       Defendant.

Hon. April M. Perry

Case No. 1:24-cv-08120

**DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 9

I.     The Parties' Valid Arbitration Agreements Require the Court to Compel
Arbitration on Each Plaintiff's Claims and Any Gateway Arbitrability Issues ......... 9

     A.     Each Plaintiff's MSA Includes a Valid Arbitration Agreement ............................ 9

     B.     The Parties Clearly and Unmistakably Delegated Questions of
Arbitrability to the Arbitrator ................................................................................. 11

II.     Even if the Court Were to Decide the Remaining Gateway Questions of
Arbitrability, the Court Should Still Compel Arbitration as to Each
Plaintiff's Claims ............................................................................................................ 14

     A.     The Arbitration Agreements are Enforceable ....................................................... 14

     B.     The Arbitration Agreements Cover Plaintiffs' Claims ......................................... 15

     C.     Plaintiffs Refused to Arbitrate .............................................................................. 17

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.E. Staley Mfg. Co. v. Robertson,*
200 Ill. App. 3d 725, 558 N.E.2d 434 (1990) ........................................................15

*Avid Eng'g, Inc. v. Orlando Marketplace Ltd.,*
809 So. 2d 1 (Fla. Dist. Ct. App. 2001) ...............................................................15

*Bahoor v. Varonis Sys., Inc.,*
152 F. Supp. 3d 1091 (N.D. Ill. 2015) ..................................................................8

*Bishop v. We Care Hair Dev. Corp.,*
316 Ill. App. 3d, 738 N.E.2d 610 (2000) ............................................................11

*Blimpie Int'l, Inc. v. Butterworth,*
2005 WL 756218 (S.D. Ind. Mar. 9, 2005)..........................................................17

*Chopper Trading LLC v. Allston Trading LLC,*
2021 WL 3709188 (N.D. Ill. Aug. 20, 2021) .......................................................12

*Chrysler Corp. v. Kolosso Auto Sales, Inc.,*
148 F.3d 892 (7th Cir. 1998) ...............................................................................15

*Conway v. Done Rite Recovery Servs., Inc.,*
2015 WL 1989665 (N.D. Ill. Apr. 30, 2015) ..................................................11, 12

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985)...........................................................................................1, 7

*Doctor's Assocs., Inc. v. Casarotto,*
517 U.S. 681 (1996).............................................................................................14

*Everett v. Paul Davis Restoration, Inc.,*
771 F.3d 380 (7th Cir. 2014) ...............................................................................14

*Gore v. Alltel Commc'ns, LLC,*
666 F.3d 1027 (7th Cir. 2012) .............................................................................15

*Gorny v. Wayfair Inc.,*
2019 WL 2409595 (N.D. Ill. June 7, 2019) ....................................................9, 15

*Grabowski v. PlatePass, L.L.C.,*
2021 WL 1962379 (N.D. Ill. May 17, 2021) ........................................................13

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003) ...................................................................................................11

*Gupta v. Morgan Stanley Smith Barney, LLC*,
    934 F.3d 705 (7th Cir. 2019) .....................................................................................10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ......................................................................................8, 11, 12, 13

*Hytran Corp. v. Man Nutzfahrzeuge Aktiengesellschaft*,
    1995 WL 443926 (N.D. Ill. July 24, 1995) ..............................................................15

*K.F.C. v. Snap Inc.*,
    29 F.4th 835 (7th Cir. 2022) .....................................................................................12

*K.H. by and through Headlee v. Chicago Urban Air, LLC*,
    2023 WL 6976990 (N.D. Ill. Oct. 23, 2023) ..........................................................8, 9

*Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*,
    660 F.3d 988 (7th Cir. 2011) .......................................................................................7

*Kemph v. Reddam*,
    2015 WL 1510797 (N.D. Ill. Mar. 27, 2015) ..........................................................12

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
    174 F.3d 907 (7th Cir. 1999) .....................................................................................15

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) ......................................................................................................8

*Matricciani v. Am. Homeowner Pres., Inc.*,
    718 F. Supp. 3d 825 (N.D. Ill. 2024) (Cummings, J.) .................................10, 11, 18

*Melena v. Anheuser-Busch, Inc.*,
    219 Ill. 2d 135, 847 N.E.2d 99 (2006) ....................................................................10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ....................................................................................................8

*Moreno v. Progistics Distrib., Inc.*,
    2018 WL 3659348 (N.D. Ill. Aug. 2, 2018) ............................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ........................................................................................................8

*Muhammad v. Dollar Tree and Pierucci*,
    2020 WL 1530750 (N.D. Ill. Mar. 31, 2020) ............................................................8

*Nat'l Cas. Co. v. Cont'l Ins. Co.*,
  2024 WL 4866798 (7th Cir. Nov. 22, 2024)...........................................................18

*O'Shea v. Maplebear Inc.*,
  508 F. Supp. 3d 279 (N.D. Ill. 2020) .....................................................................1

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010)....................................................................................11, 13, 14

*Schultz v. Epic Sys. Corp.*,
  376 F. Supp. 3d 927 (W.D. Wis. 2019) ................................................................18

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
  553 F. Supp. 3d 452 (N.D. Ill. 2021) ...................................................................13

*Shipp v. XA, Inc.*,
  2006 WL 2583720 (N.D. Ill. Aug. 31, 2006) .......................................................15

*Tonkawa Tribe of Indians of Okla. v. Sci. Games Corp.*,
  2022 WL 1591719 (N.D. Ill. May 19, 2022) ..........................................................7

*Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*,
  484 F. Supp. 2d 850 (N.D. Ill. 2007) ...................................................................15

*Willis v. Captain D's, LLC*,
  2015 WL 179049 (Ill. App. Ct. Jan. 14, 2015) ....................................................10

*Zhan v. Hogan*,
  2018 WL 9877970 (C.D. Ill. Dec. 18, 2018) ........................................................10

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  417 F.3d 682 (7th Cir. 2005) ....................................................................7, 14, 18

**Statutes**

9 U.S.C. § 2........................................................................................................8, 14

9 U.S.C. § 3...........................................................................................................18

9 U.S.C. § 4.............................................................................................................7

**Rules**

Fed. R. Civ. P. 6.....................................................................................................6

Fed. R. Civ. P. 8...................................................................................................13

Fed. R. Civ. P. 56...................................................................................................8

**Other Authorities**

Am. Arb. Assoc., Commercial Arbitration Rules and Mediation Procedures,
https://adr.org/sites/default/files/Commercial%20Rules.pdf...................................................13

**INTRODUCTION**

This dispute is subject to arbitration under straightforward principles of contract law and the Federal Arbitration Act. CDK Global, LLC provides software products and services to automotive dealerships and companies nationwide. Formula Sports Cars, Inc. and Bill Holt Chevrolet of Blue Ridge, Inc. ("plaintiffs") each use CDK's software products and services in their vehicle sale, financing, insurance, parts supply, and repair processes. To receive these products and services, plaintiffs each entered into a master services agreement, or MSA, with CDK and agreed to arbitrate "***all*** disputes" arising out of their respective MSAs or the parties' performance under the MSAs. Plaintiffs further agreed to arbitrate threshold issues of arbitrability and litigate their claims on an individual (not class-wide) basis. Nevertheless, by filing this putative class-action lawsuit against CDK, plaintiffs ignored their unequivocal agreement to arbitrate their individual claims. Plaintiffs' amended complaint alleges claims for negligence, negligence per se, unjust enrichment, breach of fiduciary duty, and declaratory judgement, *see generally* ECF No. 47, and seeks damages for harms purportedly stemming from a June 2024 cyberattack on CDK's systems. *See id.* ¶¶ 38-41.

As a matter of black-letter law, plaintiffs cannot litigate these claims in this Court. Where, as here, valid, binding arbitration agreements exist, "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 284 (N.D. Ill. 2020) ("The Act further requires courts to stay or dismiss proceedings and to compel arbitration if an issue in controversy is covered by a valid arbitration

agreement.").[1]  The MSAs are clear.  Not only did the parties agree to arbitrate "*all* disputes arising out of or relating to this Agreement" on an individual basis, but they also clearly and unmistakably agreed to delegate to an arbitrator "*[a]ny* issue concerning the extent to which a dispute is subject to arbitration."  ECF No. 40-1, Formula Sports MSA § 11 at 9-10; ECF No. 40-2 Bill Holt MSA § 11 at 44-45.  Accordingly, CDK respectfully requests the Court dismiss this action, and compel plaintiffs to arbitrate their claims and any gateway arbitrability issues.

## BACKGROUND

As set forth below, each plaintiff executed an MSA with CDK governing CDK's provision of products and services.  Each MSA contains a valid, binding arbitration agreement that governs all disputes.

*Formula Sports Cars, Inc.*  On June 30, 2020, Formula Sports Cars, Inc. and CDK executed an MSA governing CDK's provision of products and services to Formula Sports, and on November 28, 2022, the parties also executed a schedule with a term of 39 months.  *See* ECF No. 40-1,[2] Formula Sports MSA at 11; ECF No. 40-3, Schedule to MSA at 3 ("This Schedule incorporates the terms and conditions of the Master Services Agreement which has been previously executed between CDK and Client"); *id*. ("the term of this Schedule shall be a period of 39 months.").  Section 11 of the Formula Sports MSA includes a detailed and conspicuously disclosed agreement to arbitrate and a class action waiver:

---

[1]  All internal quotations and citations have been cleaned up unless otherwise noted.  All emphasis has been added, unless otherwise noted as well.

[2]  To avoid burdening the Court and cluttering the Court's docket with repeated exhibits and an additional motion to seal, CDK references the exhibits attached to CDK's initial motion to compel arbitration and dismiss proceedings (ECF Nos. 38, 39, 40), some of which were also previously sealed by the Court (ECF No. 43).

11. DISPUTE RESOLUTION BY ARBITRATION; CHOICE OF LAW; CLASS ACTION WAIVER.

A. *All disputes* arising out of or relating to this Agreement or a party's performance hereunder, including, but not limited to, disputes involving conduct and representations made during this Agreement's formation and negotiation, *and based on any legal theory* (including but not limited to contract, warranty, tort and fraud) *will be resolved solely through binding and confidential arbitration* in Cook County, Illinois by a single arbitrator, under the International Institute for Conflict Prevention & Resolution Rules for Non-Administered Arbitration then in effect. Unless otherwise required by the arbitrator, each party to the lawsuit shall be limited to no more than five depositions. The arbitrator may issue temporary, preliminary, or permanent injunctive or declaratory relief, but may not award punitive damages. *Any issue concerning the extent to which a dispute is subject to arbitration, shall be governed by the Federal Arbitration Act and resolved by the arbitrator.*

Nothing in this Section will prevent CDK from resorting directly to judicial proceedings for injunctive relief, if CDK deems a lawsuit necessary or advisable to prevent irreparable injury to CDK or to protect its intellectual property rights. The parties consent to the jurisdiction of state and federal courts sitting in Cook County, Illinois, in addition to any other court of competent jurisdiction for such judicial injunctive relief, and for enforcement of any judgment or arbitration award. The arbitration decision shall also remain confidential, except to the extent necessary to enforce the award in a judicial action. The parties waive any right to a trial by jury.

ECF No. 40-1, Formula Sports MSA § 11(A) at 9.

In particular, Formula Sports agreed that (i) "all disputes arising out of or relating to this Agreement or a party's performance . . . based on any legal theory . . . will be resolved solely through binding and confidential arbitration"; (ii) the arbitration would be conducted "in Cook County, Illinois by a single arbitrator, under the International Institute for Conflict Prevention & Resolution Rules for Non-Administered Arbitration"; and (iii) "[a]ny issue concerning the extent to which a dispute is subject to arbitration, shall be governed by the Federal Arbitration Act and resolved by the arbitrator." *Id.*

The Formula Sports MSA also includes a class action waiver, which provides that "RESOLUTION OF ALL DISPUTES, AS DESCRIBED IN SECTION 11.A, WHETHER BY ARBITRATION, LAWSUIT, ACTION OR OTHER LEGAL PROCEEDING, SHALL BE CONDUCTED AND RESOLVED ON AN INDIVIDUAL BASIS ONLY, AND NOT ON A CLASS-WIDE, MULTIPLE PLAINTIFF, MULTIPLE CLAIMANT, CONSOLIDATED OR SIMILAR BASIS." *Id.* § 11(C) at 9-10. Formula Sports knowingly agreed to "WAIVE[] ANY RIGHT TO PARTICIPATE IN ANY WAY IN A CLASS ACTION LAWSUIT AGAINST CDK." *Id.*

***Bill Holt Chevrolet of Blue Ridge, Inc.*** On July 29, 2023, CDK and Bill Holt Chevrolet of Blue Ridge, Inc. executed an MSA and schedule governing CDK's provision of products and services to Bill Holt for a term of 60 months. *See* ECF No. 40-2, Bill Holt MSA at 1-2, 8, 12, 46. Section 11 of the Bill Holt MSA includes a detailed and conspicuously disclosed agreement to arbitrate and a class action waiver that is substantially similar to the arbitration agreement in the Formula Sports MSA. *Compare id.* § 11 at 44-45 *with* ECF No. 40-1, Formula Sports MSA § 11 at 9-10. In particular, Bill Holt agreed that (i) "all disputes arising out of or relating to this Agreement or a party's performance . . . based on any legal theory . . . will be resolved solely through binding and confidential arbitration;" (ii) the arbitration would be conducted "in Cook County, Illinois by a single arbitrator, under the International Institute for Conflict Prevention & Resolution Rules for Non-Administered Arbitration;" and (iii) "[a]ny issue concerning the extent to which a dispute is subject to arbitration, shall be governed by the Federal Arbitration Act and resolved by the arbitrator." *See* ECF No. 40-2, Bill Holt MSA at 44-45. Bill Holt also knowingly agreed to a class action waiver that is identical to the provision contained in the Formula Sports MSA. *Compare id.* § 11(C) *with* ECF No. 40-1, Formula Sports MSA § 11(C) at 9-10.

4

***Cyber Incident and Class Action.*** On June 19, 2024, CDK experienced a ransomware attack on its systems. ECF No. 47 ¶¶ 3, 25. Shortly thereafter, CDK proactively, and temporarily, took all applications and third-party integrations offline to ensure containment of the criminal actor, restore impacted systems, and conduct a third-party investigation and review of forensic data.[3] All major applications and third-party integrations were restored within a matter of weeks. *See* ECF No. 39-7, 2024/07/04, Email from D. Rheaume to CDK Customers. CDK also proactively and as a gesture of goodwill waived any fees for services in the month of June. *See* ECF No. 39-6 at 3.

Notwithstanding their arbitration agreements and class action waivers, plaintiffs—along with the former purchaser and dealership plaintiffs[4]—filed a putative class action lawsuit on June 30, 2024, on behalf of themselves and several putative classes, including putative nationwide dealership, consumer, servicer, auto salesperson, auto service employee, and finance personnel classes. ECF No. 1. As described below, on December 16, 2024, the remaining two dealership plaintiffs—Formula Sports and Bill Holt—filed an amended complaint on behalf of a dealership class only. The amended complaint alleges that CDK "fail[ed] to implement adequate security measures, despite its public declarations of vigilance," which "resulted in a breach," and asserts claims for negligence (Count I), negligence per se (Count II), unjust enrichment (Count III), breach of fiduciary duty (Count IV), and Declaratory Judgment (Count V) on behalf of the dealership

---

[3] ECF No. 39-6, *M. Hollmer*, *CDK CEO Brian MacDonald works to move beyond cyberattacks*, Automotive News, Aug. 28, 2024, https://www.autonews.com/retail/cdk-cyberattacks-aftermath-accelerated-innovation-investment.

[4] Purchaser/consumer plaintiffs Annie Ortiz and Alexis Janet Pino and dealership plaintiffs Prestige Motor Car Imports, LLC and Bill Holt Chevrolet of Canton, Inc. were previously dropped from this action (the "former plaintiffs"). (*See* ECF Nos. 35 and 43.) Accordingly, Formula Sports and Bill Holt of Blue Ridge are the only remaining plaintiffs in this action.

plaintiffs and the putative class on the basis that the impact of the incident caused plaintiffs "financial losses."  *See* ECF No. 47 ¶¶ 4, 25.

> ***CDK's Initial Motion to Compel Arbitration and Dismiss Proceedings.***  On October 8, 2024, CDK formally informed plaintiffs that it intended to move to compel arbitration in light of the parties' binding arbitration agreements.  *See* ECF No. 39-8, 2024/10/22, Email from J. Portal to H. Darling.[5]  Plaintiffs did not withdraw their Complaint, stating they would "oppose CDK's motion and intend to file a written response."  *Id.*  On October 30, 2024, CDK then moved to compel plaintiffs to arbitrate their claims and dismiss this action.  *See* ECF Nos. 38, 39.  As described in CDK's motion, each plaintiff has an enforceable arbitration agreement with CDK that governs the instant dispute.  *See* ECF No. 39 at 2-4, 8-12.

Plaintiffs did not file any opposition to CDK's motion, despite having previously indicated they would oppose, *see* ECF No. 39-8 at 3, and jointly seeking a Court-ordered briefing schedule to do so, *see* ECF Nos. 33, 35 (ordering plaintiffs' response was due November 20, 2024).  On December 11, 2024, CDK timely filed its reply in support of its motion and explained that "where a party fails to file a timely response to a motion to compel arbitration, courts in this Circuit and others construe the motion as unopposed."  ECF No. 46 at 3.  Plaintiffs offered no excuse for their failure to timely oppose CDK's motion.  *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must

---

[5]    To date, 16 lawsuits have been filed in state and federal court against CDK relating to the June 2024 cyberattack.  In the time between the filing of the complaint in this case and CDK's formal written notification that it intended to move to compel arbitration on October 8, 2024, CDK and plaintiffs' counsel in those actions, and plaintiffs' counsel amongst themselves, engaged in prolonged discussions about how the various cases would proceed.  *See* ECF No. 39-1, Decl. of D. Anderson, ¶¶ 2-5.  In the course of these conversations, counsel for CDK explained that it would not agree to consolidation of the cases involving dealerships because of the arbitration provisions in the MSAs.  *Id.*  CDK made clear on multiple occasions that it intended to invoke the arbitration agreements contained therein.  *Id.*

be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.").

Instead, five days after CDK's timely reply brief, plaintiffs filed an amended complaint. *See* ECF No. 47. Regardless of plaintiffs' motivation, nothing in the amended complaint saves plaintiffs from their obligation to submit to arbitration. Plaintiffs' claims must be arbitrated for the reasons expressed in CDK's original motion, which CDK renews here. CDK respectfully moves this Court to dismiss this action and compel plaintiffs to individually arbitrate their claims.

## LEGAL STANDARD

Under the Federal Arbitration Act (FAA), a "party aggrieved by the alleged failure . . . of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.[6] Courts should grant a motion to compel arbitration when: (1) there is a "written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal [] to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005); *Tonkawa Tribe of Indians of Okla. v. Sci. Games Corp.*, 2022 WL 1591719, at *3 (N.D. Ill. May 19, 2022) (citing *Zurich*, 417 F.3d at 687) (a court "should grant a motion to compel arbitration where" these three elements are met); *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district

---

[6] "[I]f an arbitration clause contains a choice of venue provision, only a court within the same district of that venue can enter an order compelling arbitration." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011). Here, section 11(A) of each plaintiff MSA contains a choice-of-venue provision stating: "[a]ll disputes . . . will be resolved solely through binding and confidential arbitration in Cook County, Illinois by a single arbitrator." *See* ECF No. 40-1, Formula Sports MSA § 11(A) at 9-10; ECF No. 40-2, Bill Holt MSA § 11(a) at 44-45. The Northern District of Illinois encompasses Cook County, and as such, this Court can enter an order compelling arbitration as to each dealer under FAA Section 4.

courts shall direct the parties to proceed to arbitration"). The Court may consider materials outside the pleadings when evaluating such a motion. *Muhammad v. Dollar Tree and Pierucci*, 2020 WL 1530750, at *2 (N.D. Ill. Mar. 31, 2020).

The FAA reflects "an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Consistent with this policy, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once an agreement is found to exist, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

The parties may also agree to "have an arbitrator decide . . . gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) ("parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence"). While the court still "determines whether a valid arbitration agreement exists," if an agreement is found to exist and "the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*. at 69.

The party seeking to "oppose" the application of an arbitration agreement "bears the burden of demonstrating" that arbitration is unsuitable. *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015). That burden is akin to that of a party opposing summary judgment under Rule 56. *See K.H. by and through Headlee v. Chicago Urban Air, LLC*, 2023 WL 6976990, at *2 (N.D. Ill. Oct. 23, 2023). A "party cannot avoid compelled arbitration by generally denying

the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*

## ARGUMENT

Where, as here, the parties entered into valid arbitration agreements and delegated all "gateway" questions of arbitrability—including enforceability and applicability of the agreement—to the arbitrator, the Court must compel arbitration. But even if this Court were to decide the gateway questions of arbitrability, the Court should compel arbitration because the arbitration agreements are enforceable, and plaintiffs' claims fall within their scope.

**I.    The Parties' Valid Arbitration Agreements Require the Court to Compel Arbitration on Each Plaintiff's Claims and Any Gateway Arbitrability Issues**

**A.    Each Plaintiff's MSA Includes a Valid Arbitration Agreement**

Each of plaintiff's respective MSAs contain a valid agreement by CDK and each individual plaintiff to arbitrate the claims at issue in this lawsuit. "Whether an agreement to arbitrate has been formed is governed by state law"—here, Illinois law. *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *5 (N.D. Ill. June 7, 2019); *see also* ECF No. 40-1, Formula Sports MSA § 11(B) ("This Agreement . . . shall be governed by Illinois law"), ECF No. 40-2, Bill Holt MSA § 11(b) (same). As the Seventh Circuit explained:

> When, as here, a case concerns the application of the Federal Arbitration Act, the Illinois Supreme Court has based its analysis upon principles of fundamental contract law to determine the formation of an agreement. The court applies general contract doctrines . . . [thus], we start by evaluating the standard we must use under Illinois law to ascertain the parties' manifestation of mutual assent (the proverbial meeting of the minds). After that, we consider the elements of contract formation and whether they exist here to create an enforceable arbitration agreement.

*Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 711 (7th Cir. 2019) (quoting *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 148-49, 847 N.E.2d 99, 103, 107-08 (2006)). Each arbitration agreement easily meets each of these requirements.

First, mutual assent exists between CDK and each of the plaintiffs. Under Illinois law, a "party who signed a contract is charged with knowledge of, and assent to, its terms." *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 836 (N.D. Ill. 2024) (Cummings, J.) (citing *Melena*, 847 N.E.2d at 108). CDK's assent is not in question, and each plaintiff signed their respective MSA, via their authorized officer, which establishes assent. Formula Sports' authorized officer signed the Formula Sports MSA on June 22, 2020. *See* ECF No. 40-1, Formula Sports MSA at 11; *see also* ECF No. 39-5, Decl. of S. Herbers ¶ 9. Bill Holt's authorized officer signed the Bill Holt MSA on July 29, 2023. *See* ECF No. 40-2, Bill Holt MSA at 46; *see also* ECF No. 39-5, Decl. of S. Herbers ¶ 17.

Second, the elements of contract formation are satisfied as to each MSA. "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena*, 847 N.E.2d at 151.

- ***Offer and Acceptance.*** Formula Sports was given a copy of the Formula Sports MSA to sign and did sign it. *See* ECF No. 40-1, Formula Sports MSA at 11. Likewise, Bill Holt was given a copy of the Bill Holt MSA to sign and did sign it electronically. *See* ECF No. 40-2, Bill Holt MSA at 46. These acts constitute offer and acceptance. *See Matricciani*, 718 F. Supp. 3d at 836-37; *Zhan v. Hogan*, 2018 WL 9877970, at *9 (C.D. Ill. Dec. 18, 2018) ("Plaintiff's signature is evidence of his acceptance of the terms of the contract and shows that a contract was formed."); *Willis v. Captain D's, LLC*, 2015 WL 179049, at *3 (Ill. App. Ct. Jan. 14, 2015) ("The plaintiff's signature, under Illinois law, is evidence of

her acceptance of the contract's terms."); *see also* ECF No. 39-5, Decl. of S. Herbers ¶¶ 7, 9, 15, 17.

- ***Consideration.*** A "mutual waiver of judicial resolution, constitutes consideration." *Matricciani*, 718 F. Supp. 3d at 836; *Bishop v. We Care Hair Dev. Corp.*, 316 Ill. App. 3d, 1182, 1198, 738 N.E.2d 610, 623 (2000) (A "mutual promise to arbitrate is sufficient consideration to support an agreement to arbitrate"); *Moreno v. Progistics Distrib., Inc.*, 2018 WL 3659348, at *4-5 (N.D. Ill. Aug. 2, 2018). The arbitration agreements in each of the plaintiff's MSAs bind both CDK and each plaintiff, respectively, to arbitration of their disputes arising from their respective MSA or performance under the MSA, and thus constitute the necessary consideration. *See* ECF No. 40-1, Formula Sports MSA § 11 at 9-10; ECF No. 40-2, Bill Holt MSA § 11 at 44-45.

### B. The Parties Clearly and Unmistakably Delegated Questions of Arbitrability to the Arbitrator

Courts generally assume that parties intend for courts to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion); *Conway v. Done Rite Recovery Servs., Inc.*, 2015 WL 1989665, at *5 (N.D. Ill. Apr. 30, 2015) (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)) ("The Supreme Court has recognized that parties may delegate . . . threshold issues—including whether a particular dispute is within the scope of an arbitration agreement—to an arbitrator."). But because arbitration is a matter of contract, "parties can agree to arbitrate" these "gateway questions of arbitrability." *Rent-A-Center*, 561 U.S. at 68-69. And "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Henry Schein, Inc.*, 586 U.S. at 69.

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id*. at 65, 71. Here, each MSA reflects a clear and unmistakable intent to delegate all threshold arbitrability questions. *See* ECF No. 39-5, Decl. of S. Herbers ¶¶ 6-9, 14-17.

First, the terms of each arbitration agreement include an explicit and unambiguous delegation provision: the parties delegate "[a]ny issue concerning the extent to which a dispute is subject to arbitration" to the arbitrator. ECF No. 40-1, Formula Sports MSA § 11(A) at 9; ECF No. 40-2, Bill Holt MSA § 11(a) at 44-45. Courts in this district uniformly enforce similar delegation clauses. *See*, *e.g.*, *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (other than the question of whether a contract exists, "an arbitration clause may delegate all other issues, including defenses, to the arbitrator"); *Conway*, 2015 WL 1989665, at *5 (provision stating that "[t]he arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause" was a valid delegation); *Chopper Trading LLC v. Allston Trading LLC*, 2021 WL 3709188, at *7 (N.D. Ill. Aug. 20, 2021) ("whether the claims in this case fall within the scope of the arbitration agreement and thus are arbitrable" was "a question for the arbitrator"); *Kemph v. Reddam*, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (contract stating "any dispute . . . will be resolved by binding arbitration" showed clear intent to delegate).

Second, even if the arbitration agreements were not already clear on their faces, each agreement incorporates the International Institute for Conflict Prevention & Resolution Rules for Non-Administered Arbitration ("CPR Rules"), which themselves provide that the arbitrator decides threshold questions of arbitrability including as to the "existence, scope or validity" of an arbitration agreement. *See* ECF No. 40-1, Formula Sports MSA § 11(A) at 9; ECF No. 40-2, Bill

Holt MSA § 11(a) at 44-45; CPR Rules, Rule 8 ("arbitrator(s) have the competence initially to determine their own jurisdiction, both over the subject matter of the dispute and over the parties to the arbitration. Accordingly, *any objections to the existence, scope or validity of the arbitration agreement, or the arbitrability of the subject matter of the dispute, are decided, at least in the first instance, by the Tribunal*."). Federal courts routinely hold that reference to or incorporation of similar rules, such as the AAA rules, constitute clear and unmistakable evidence to delegate arbitrability to an arbitrator.[7] *See Grabowski v. PlatePass, L.L.C.*, 2021 WL 1962379, at *3 (N.D. Ill. May 17, 2021); *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458-59 (N.D. Ill. 2021) ("Every federal court of appeals to consider the question— twelve of thirteen—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

The existence of a delegation provision thus substantially narrows the scope of this Court's review. *See*, *e.g.*, *Rent-A-Center*, 561 U.S. at 71-72; *Henry Schein, Inc.*, 586 U.S. at 69 ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). Where, as here, there are valid delegation clauses in the MSAs, this Court's inquiry is limited to the issue of whether an arbitration agreement was formed. As discussed above, the answer to that question is "yes." The Court's inquiry ends there, and the Court should direct each plaintiff's claims to arbitration.

---

[7] AAA Commercial Rule 7(a) expressly delegates arbitrability questions to the arbitrator, as follows: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Am. Arb. Assoc., Commercial Arbitration Rules and Mediation Procedures, https://adr.org/sites/default/files/Commercial%20Rules.pdf.

## II. Even if the Court Were to Decide the Remaining Gateway Questions of Arbitrability, the Court Should Still Compel Arbitration as to Each Plaintiff's Claims

Because the arbitration agreements include delegation clauses, the remaining threshold questions of arbitrability—such as whether the agreements are enforceable or whether plaintiffs' claims fall within the scope of their arbitration agreements—are for the arbitrator, not this Court. *Rent-A-Center*, 561 U.S. at 72 (absent a specific challenge to the delegation provision, courts "must treat it as valid under § 2, and must enforce it under" the FAA). But even if this Court were to reach those questions, it should still compel arbitration because the remaining requirements to compel arbitration—that the agreements are enforceable, the claims are within the scope of the agreements, and plaintiffs refuse arbitration—are again easily met. *See Zurich*, 417 F.3d at 690.

### A. The Arbitration Agreements are Enforceable

Arbitration agreements are presumptively valid and enforceable. *See* 9 U.S.C. § 2. Courts must therefore uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see Rent-A-Center*, 561 U.S. at 69 n.1 ("The *validity* of a written agreement to arbitrate (whether it is legally binding, as opposed to whether it was in fact agreed to—including, of course, whether it was void for unconscionability) is governed by § 2's provision that it shall be valid save upon such grounds as exist at law or in equity for the revocation of any contract."). Plaintiffs have made no allegations of fraud, and courts routinely find that arm's-length transactions between sophisticated business entities in the automotive industry, such as the parties here, belie any claim of duress or unconscionability as to the arbitration agreements. *See Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 386 (7th Cir. 2014) (finding plaintiff's argument that an arbitration clause was unconscionable was "frivolous" because "this agreement is not the typical consumer contract

14

involving a highly sophisticated party and one without sophistication. Instead, the terms of the agreement here were negotiated by two sophisticated parties."); *Avid Eng'g, Inc. v. Orlando Marketplace Ltd.*, 809 So. 2d 1, 5 (Fla. Dist. Ct. App. 2001) (arbitration provision was "not substantively unconscionable" because "the arbitration provision was negotiated at arms length by relatively sophisticated parties with relatively equal bargaining power and understanding of the contract language"); *Chrysler Corp. v. Kolosso Auto Sales, Inc.*, 148 F.3d 892, 897 (7th Cir. 1998) ("Modern automobile dealers are substantial and sophisticated businesses."); *see also* ECF No. 39-5, Decl. of S. Herbers ¶¶ 6, 14. The MSAs are enforceable.

### B.  The Arbitration Agreements Cover Plaintiffs' Claims

Once the Court determines that an enforceable arbitration agreement exists, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. In particular, "arising out of or relating to" language is "extremely broad," "capable of an expansive reach," and "necessarily creates a presumption of arbitrability." *Id*. at 1034; *see also*, *e.g.*, *A.E. Staley Mfg. Co. v. Robertson*, 200 Ill. App. 3d 725, 731, 558 N.E.2d 434, 438 (1990); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *Gorny*, 2019 WL 2409595, at *3-4; *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853-54 (N.D. Ill. 2007); *Shipp v. XA, Inc.*, 2006 WL 2583720, at *3 (N.D. Ill. Aug. 31, 2006); *Hytran Corp. v. Man Nutzfahrzeuge Aktiengesellschaft*, 1995 WL 443926, at *5 (N.D. Ill. July 24, 1995). Plaintiffs' claims fall squarely within the scope of each MSA's broad arbitration agreement, which covers "*[a]ll disputes arising out of or relating to* this Agreement

. . . based on *any legal theory* (including but not limited to contract, warranty, tort and fraud)." ECF No. 40-1, Formula Sports MSA § 11(A) at 9; ECF No. 40-2, Bill Holt MSA § 11(a) at 44-45.

Here, the MSAs govern CDK's provisions of products and services to Formula Sports and Bill Holt, and the terms under which those products and services are provided. ECF No. 40-1, Formula Sports MSA § 1(A) at 1 ("CDK . . . agrees to provide Client and Client agrees to obtain from CDK, in accordance with the terms and conditions of this Agreement . . . the following . . . Products and Services."); ECF No. 40-2, Bill Holt MSA § 1(a) at 37 (same). Plaintiffs' claims stem directly from issues with the products and services CDK provided under the respective MSAs during and after the June 2024 cyberattack and the "significant financial loss" plaintiffs allegedly suffered. *See* ECF No. 47 ¶ 41 (alleging "CDK's systems have become a vulnerability for these car dealerships by directly undermining dealership operations and causing significant financial loss").

For example, plaintiffs' negligence claim (Count I) is predicated on CDK's "conduct" in "fail[ing] to take proper security measures to protect the sensitive PII of Plaintiffs and Class members." *Id.* ¶¶ 74, 76. Plaintiffs' negligence per se claim (Count II) is similarly based on CDK's "conduct" and alleged "failure to employ reasonable data security measures." *See id.* ¶¶ 79, 82. Section 5 of the MSAs dictate what "reasonable security measures" CDK will provide under the contract. ECF No. 40-1, Formula Sports MSA § 5 at 4-5; ECF No. 40-2, Bill Holt MSA § 5 at 39-41. Likewise, plaintiffs' unjust enrichment claim (Count III) is predicated on the alleged "monetary benefit" plaintiffs "conferred . . . on CDK in the form of payments for its services" and seeks "actual damages . . . including damages equaling the difference in value between . . . security practices that Plaintiffs and Class members paid for and the services . . . they actually received." *See* ECF No. 47 ¶¶ 85, 89. Once again, the respective MSAs dictate what services CDK would

16

provide and the cost thereof. ECF No. 40-1, Formula Sports MSA §§ 1, 3 at 1-3; ECF No. 40-2, Bill Holt MSA §§ 1, 3 at 37-39. Additionally, plaintiffs' claim for breach of fiduciary duty (Count IV) is predicated on CDK's purported duty to exercise care in "obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in its possession." ECF No. 47 ¶ 94. But again, Section 5 of the MSAs dictate what security measures CDK will provide under the contract. ECF No. 40-1, Formula Sports MSA § 5 at 4-5; ECF No. 40-2, Bill Holt MSA § 5 at 39-41. Lastly, plaintiffs' declaratory judgment claim (Count V) alleges that "CDK still possesses PII pertaining to Plaintiffs and Class members" such that their "PII remains at risk of further breaches because CDK's data security measures remain inadequate." *See* ECF No. 47 ¶ 106. The disposition of client data, including "Non-Public Personal Information of any Consumer provided to it by Client," however, is likewise governed by the MSAs. ECF No. 40-1, Formula Sports MSA § 5 at 4-5; ECF No. 40-2, Bill Holt MSA § 5 at 39-41. There is no question that such alleged claims for negligence, negligence per se, unjust enrichment, breach of fiduciary duty, and declaratory judgment reflect "disputes arising out of or relating to [plaintiffs'] Agreement[s]" that are subject to arbitration. ECF No. 40-1, Formula Sports MSA § 11(A) at 9; ECF No. 40-2, Bill Holt MSA § 11(a) at 44-45.

### C.  Plaintiffs Refused to Arbitrate

Finally, plaintiffs' lawsuit constitutes an unequivocal refusal to arbitrate. *Blimpie Int'l, Inc. v. Butterworth*, 2005 WL 756218, at *10 (S.D. Ind. Mar. 9, 2005) ("[B]y filing the state court action, Butterworth and Hunter have repudiated their agreement to arbitrate. Their repudiation constitutes a neglect, failure or refusal to arbitrate[.]"). Plaintiffs also did not withdraw their complaint after CDK informed them of their contractual obligations and CDK's intent to move to enforce their respective arbitration agreements, nor have they withdrawn their amended complaint. ECF No. 39-8, 2024/10/22, Email from J. Portal to H. Darling ("Plaintiffs oppose CDK's motion

[to compel arbitration] and intend to file a written response"); *see also Zurich*, 417 F.3d at 690, n.7 ("Watts's conduct after Zurich's request for arbitration and position taken in these proceedings clearly manifest a refusal to arbitrate."); *Matricciani*, 718 F. Supp. 3d at 834, n.3 ("The third prong, refusal to arbitrate, is met by [plaintiff's] objection to arbitration, undisputedly expressed in her briefing."). Arbitration should be compelled as to each plaintiff.

## CONCLUSION

CDK respectfully requests that the Court grant its motion to compel arbitration of all claims brought by each plaintiff, respectively, and dismiss this litigation. *See Schultz v. Epic Sys. Corp.*, 376 F. Supp. 3d 927, 939 (W.D. Wis. 2019) (recognizing "a judicially-created exception to the general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration."); *Nat'l Cas. Co. v. Cont'l Ins. Co.*, 2024 WL 4866798, at *2 (7th Cir. Nov. 22, 2024) (determining that it was not required to vacate the court's dismissal of the suit stemming from a grant of a motion to compel arbitration).[8]

---

[8] In the alternative, and only if the Court determines that dismissal is not proper, CDK requests the Court stay the litigation until such arbitrations are complete. *See* 9 U.S.C. § 3.

Dated:  December 30, 2024

Respectfully submitted,

*/s/ Devin S. Anderson*
Devin S. Anderson (pro hac vice)
Haley L. Darling (pro hac vice)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 389-3245
Fax: (202) 389-5200
devin.anderson@kirkland.com
haley.darling@kirkland.com

Martin L. Roth, P.C.
Lead Attorney
IL Bar No. 6296464
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Tel: (312) 862-2000
Fax: (312) 862-2200
rothm@kirkland.com

*Counsel for Defendant CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 30, 2024 a true and correct copy of the foregoing

**DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS
RENEWED MOTION TO COMPEL ARBITRATION AND DISMISS AMENDED
COMPLAINT** was electronically filed with the Court via the CM/ECF system which sent

notification of such filing to all Counsel of Record.

Dated: December 30, 2024                    */s/ Devin S. Anderson*
                                                          Devin S. Anderson